# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

YEVGENEY DRUBETSKOY        *

       v.        *        Civil Case No. CCB-13-2196

WELLS FARGO BANK, N.A.        *

******

## MEMORANDUM

Plaintiff Yevgeney Drubetskoy initiated this action against defendant Wells Fargo Bank, N.A. ("Wells Fargo"), alleging that Wells Fargo failed to pay him commissions owed. Drubetskoy also alleges that Wells Fargo failed to compensate him for overtime hours worked in 2010 and 2011. Now pending is Wells Fargo's motion to dismiss the complaint for failure to state a claim upon which relief can be granted. This matter has been fully briefed, and a hearing was held on December 6, 2013. *See* ECF No. 16. For the reasons stated below, Wells Fargo's motion to dismiss will be granted in part and denied in part.

### I. Background

This suit arises from Drubetskoy's employment at Wells Fargo, where he worked as a loan officer from November 2010 until his termination on February 6, 2013. Compl. ¶¶ 3, 5, ECF No. 2. Drubetskoy contends that Wells Fargo owes him commissions on loans that he originated prior to his termination. *Id.* ¶¶ 6, 7, 12. According to Drubetskoy, Wells Fargo intentionally terminated his employment and delayed certain loan closings to avoid paying him the commissions due. *Id.* ¶¶ 21-24. Further, Drubetskoy is seeking approximately $20,000 in overtime pay from 2010 and 2011. *Id.* ¶¶ 32-37. Wells Fargo changed its overtime policy in late

2011, and paid Drubetskoy approximately $50,000 in overtime wages the following year. *Id.* ¶ 36.

On June 12, 2013, Drubetskoy filed a five-count complaint against Wells Fargo in the Circuit Court for Baltimore County, asserting claims for violation of the Maryland Wage Payment and Collection Law ("MWPCL"), wrongful discharge, quantum meruit, unjust enrichment, and violation of the Maryland Wage and Hour Law ("MWHL"). On July 29, 2013, Wells Fargo timely removed the case to this Court pursuant to 28 U.S.C. § 1441, asserting diversity jurisdiction. Notice of Removal, ECF No. 1. On August 5, 2013, Wells Fargo filed a motion to dismiss all five counts. Def.'s Mot., ECF No. 8. Oral argument was heard on December 6, 2013.

## II. Wells Fargo's Motion to Dismiss

### A. Standard of Review

Wells Fargo moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted). In ruling on a 12(b)(6) motion, the court should accept as true the well-pleaded facts alleged in the complaint and draw all reasonable factual inferences in favor of the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Ibarra v. U.S.*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, the complaint must contain sufficient allegations, which accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)) (internal quotation marks omitted). The court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted).

As exhibits to its motion to dismiss, Wells Fargo filed (1) a copy of the Wells Fargo Home Mortgage ("WFHM") compensation plan, which was allegedly appended to Drubetskoy's employment agreement, and (2) copies of documents evidencing Drubetskoy's federal criminal conviction. A court may consider documents attached to a defendant's motion to dismiss where the documents "are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) ("[W]hen a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if plaintiffs do not challenge its authenticity.") (internal quotations omitted). A document is integral if its "very existence and not the mere information it contains, gives rise to the legal rights asserted." *SPS Ltd. P'ship, LLLP v. Severstal Sparrows Point, LLC*, 808 F. Supp. 2d 794, 803 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). A court reviewing a motion to dismiss also may "properly take judicial notice of matters of public record." *Philips*, 572 F.3d at 180. Under those standards, the records submitted by Wells Fargo are appropriate for consideration. Drubetskoy does not dispute the authenticity of the compensation plan, and in fact relied on the compensation plan in his complaint. In addition, the plea agreement evidencing Drubetskoy's criminal conviction is a matter of public record, as it was filed in open court. *See Eweka v. Hartford Life & Accident Ins. Co.*, No. 1:12cv1055, 2013 WL 3381370, at *n.4 (E.D. Va. July 3, 2013) (taking judicial notice

of plaintiff's public docket sheet, which reflected plaintiff's prior criminal conviction pursuant to a guilty plea)[1]; *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (citations omitted). Both documents therefore have been considered in reaching the conclusions set forth herein.

### B. Analysis

#### 1. Count One – Maryland Wage Payment and Collection Law

In Count One, Drubetskoy claims that he is entitled to commissions on six loans that he both originated and closed while still employed, and on at least twenty loans that he also originated, but did not close before his termination. Compl. ¶¶ 6, 7, 11, 12. He contends that Wells Fargo's failure to pay him commissions for his procurement of the loans is a violation of the MWPCL. Wells Fargo raises two arguments in response. First, Wells Fargo contends that Drubetskoy's compensation is governed by a compensation plan that was appended to his employment agreement. *See* Compl. ¶ 13; Def.'s Mot. Ex. A. Wells Fargo asserts that Drubetskoy failed to satisfy the requisite conditions under the compensation plan to earn the commission payments, because, according to the plan, such payments vest only after the loan is settled and the money has cleared. Second, Wells Fargo argues that Drubetskoy could not receive loan proceeds after October 24, 2012, because he pled guilty to federal conspiracy charges, thus breaching the terms of his employment agreement, and providing Wells Fargo with a basis under federal law to terminate his employment. Def.'s Mot. 7-8. The merits of Drubetskoy's MWPCL claim will not be fully addressed at this point because, Wells Fargo has demonstrated that federal law barred Drubetskoy's employment with Wells Fargo following his criminal conviction. Drubetskoy was not entitled to commissions earned after that date.

---
[1] Unpublished opinions are cited not for any precedential value, but for the soundness of their reasoning.

Wells Fargo argues that, following Drubetskoy's criminal conviction, the Federal Deposit Insurance Act ("FDIA") barred Drubetskoy from employment with a federally insured bank. *See* 12 U.S.C. § 1829(a)(1)(A). Wells Fargo also argues that, upon conviction, Drubestkoy was in violation of a provision of its compensation plan, which states that eligibility for compensation is conditioned on the employee's adherence to "Wells Fargo's employment policies, and the compliance and risk management accountability requirements for your position, including, but not limited to, compliance with all policies, laws, rules, and regulations applicable to WFHM business activities as a condition precedent to earning compensation under the Plan." Def.'s Mot. Ex. A, at 1.

Section 19 of the FDIA prohibits individuals who have been convicted of certain crimes from employment with banks insured by the Federal Deposit Insurance Corporation ("FDIC"), bank holding companies, and savings and loan holding companies. *See* 12 U.S.C. § 1829. The Act states in relevant part, that, absent prior written consent from the FDIC, "any person who has been convicted of any criminal offense involving dishonesty or a breach of trust or money laundering, or has agreed to enter into a pretrial diversion or similar program in connection with a prosecution for such offense, may not become, or continue as, an institution-affiliated party with respect to any insured depository institution…" 12 U.S.C. § 1829(a)(1)(A)(i).[2] The Act defines an "institution-affiliated party" to include employees of an insured depository institution. 12 U.S.C. § 1813(u). Drubetskoy pled guilty to conspiracy to distribute narcotics and to commit money laundering. Further, while the FDIC has not enumerated crimes that involve dishonesty

---

[2] In its memorandum supporting its motion to dismiss, Wells Fargo relied on 12 U.S.C. § 1829(e), which applies the prohibition found in 12 U.S.C. §1829(a)(1)(A) to any savings and loan holding company, "as if such savings and loan holding company were an insured depository institution, except that such subsections shall be applied for purposes of this subsection by substituting 'Board of Governors of the Federal Reserve System' for 'Corporation'…" 12 U.S.C. § 1829(e). However, at the oral hearing in this case, *see* ECF No. 16, both parties agreed that Wells Fargo Bank, N.A. is properly classified as a depository institution insured by the FDIC. As there is no dispute regarding Wells Fargo's classification under the FDIA, this Court will apply the subsections governing FDIC-insured depository institutions.

5

or a breach of trust, individuals convicted of offenses concerning the illegal manufacture, sale, distribution of, or trafficking in controlled substances are expressly prohibited from employment with an insured depository institution, absent an application from the insured institution to the FDIC seeking its consent. *See* FDIC Modifications to Statement of Policy for Section 19 of the Federal Deposit Insurance Act, 77 Fed. Reg. 74,847, 74,850 (Dec. 18, 2012).

On October 12, 2012, Drubetskoy pled guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C), and 841(b)(2), and conspiracy to commit money laundering in violation of 18 U.S.C. § 1957. *See* Def.'s Mot. Ex. 1; Superseding Information, *U.S. v. Brian Daniel Goldberg et al.*, No. 3:11-cr-5(S3)-J-20JRK (M.D. Fla. Oct. 12, 2012). The U.S. District Court for the Middle District of Florida accepted Drubetskoy's plea and adjudged him guilty on October 24, 2012. *See* Acceptance of Plea of Guilty, Adjudication of Guilt and Notice of Sentencing, *U.S. v. Yevgeny Drubetskoy*, No. 3:11-cr-5(S3)-J-20JRK (M.D. Fla. Oct. 24, 2012). Wells Fargo asserts that neither it nor Drubetskoy filed an application with the FDIC seeking its consent to allow Drubetskoy to continue employment following his conviction.[3] Therefore, Wells Fargo argues, following Drubetskoy's conviction on October 24, 2012, Wells Fargo had a lawful basis to terminate his employment. I agree.

Section 19 of the FDIA provides that the FDIC cannot consent to the employment of a person convicted of conspiring to commit certain offenses, such as money laundering, "during the 10-year period beginning on the date the conviction or the agreement of the person becomes final." 12 U.S.C. § 1829(a)(2)(A)(iii). Drubetskoy's employment with Wells Fargo, following his conviction, was therefore in violation of federal law. Thus, Drubetskoy is not entitled to receive commission payments he had not already earned before the period of his unlawful

---

[3] While not considered in the resolution of this motion, counsel for Wells Fargo stated at the oral hearing that Wells Fargo was not made aware of Drubetskoy's October 2012 conviction until February 2013.

6

employment. Drubetskoy cannot now seek to recover commissions that he was allegedly denied if he was barred from receiving them in the first instance. Accordingly, Wells Fargo's Motion to Dismiss Count I will be granted as to all loans for which Drubetskoy had not completed the work necessary to earn a commission before October 24, 2012, the date of his conviction. A claim to commissions owing on any loans earned prior to October 24, 2012, will survive the motion to dismiss.

### 2. Count Two – Wrongful Discharge

Drubetskoy's wrongful discharge claim is premised on the allegation that Wells Fargo intentionally terminated his employment, and intentionally delayed closings on his loans, to avoid paying him commissions owed. In Maryland, a wrongful discharge action is permitted where the "motivation for discharge contravenes some clear mandate of public policy." *Adler v. Am. Standard Corp.*, 291 Md. 31, 47, 432 A.2d 464, 473 (1981). The public policy at issue must be "a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing, prohibiting, or protecting the conduct in question so as to make the public policy on the topic not a matter of conjecture or interpretation." *Porterfield v. Mascari II, Inc.*, 142 Md. App. 134, 140, 788 A.2d 242, 245 (Md. Ct. Spec. App. 2002).

Wells Fargo's termination of Drubetskoy was not in contravention of public policy. As discussed above, Section 19 of the FDIA mandates that individuals convicted of offenses including illegal narcotics distribution, be precluded from continuing employment with a federally insured depository institution, absent the FDIC's consent. For individuals convicted of conspiracy to commit money laundering, the FDIA completely bars them from employment with

a federally insured depository institution for ten years following the date of conviction. Therefore, Wells Fargo's termination of Drubetskoy was lawful.

Furthermore, Drubetskoy's wrongful discharge claim fails because the MWPCL claim provides a remedy to redress Drubetskoy's alleged injury. Drubetskoy argues that Wells Fargo's violation of the MWPCL itself constitutes a violation of public policy. Pl.'s Mot. 4. However, the tort of wrongful discharge is designed to provide a remedy for "particularly reprehensible conduct" when no other remedy is available. *Id.* at 245. "Thus, if the relevant public policy is contained in a statute and the statute provides a remedy, the tort of wrongful discharge is not available." *Id.* at 245-46. Where the legislature has already defined the precise remedy for the policy violation, Maryland courts are reluctant to "expand the available remedies" sounding in tort. *Wholey v. Sears Roebuck*, 370 Md. 38, 53, 803 A.2d 482, 490 (2002). The legislative purpose of the MWPCL "was to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages." *Battaglia v. Clinical Perfusionists, Inc.*, 338 Md. 352, 364, 688 A.2d 680, 686 (1995). The MWPCL provides a remedy in which the employee may bring an action against the employer to recover up to three times the amount of unpaid wages, plus attorneys' fees and costs. Md. Code Ann. Lab. & Empl. §§ 3-507.1, 3-507.2. Drubetskoy's wrongful discharge claim thus fails.

Drubetskoy also advances the theory that the MWPCL does not provide a remedy for the alleged intentional delay of closings on loans he originated. Pl.'s Opp. 4. He has not identified, however, any "clear mandate of public policy" to support that theory of wrongful discharge.

Finally, in an apparent effort to bypass the common law rule that allows either party in an at-will employment contract to terminate the contract without cause at any time, *see Page v. Carolina Coach Co.,* 667 F.2d 1156, 1158 (4th Cir. 1982), Drubetskoy contends that Count Two

should not be dismissed because there is a factual dispute as to whether or not he was an at-will employee. Pl.'s Opp. 4. The tort of wrongful or abusive discharge, however, applies equally to at-will employees and employees governed by employment contracts. *See Ewing v. Koppers Co., Inc.*, 312 Md. 45, 49, 537 A.2d 1173, 1175 (1988) ("[A] cause of action for abusive discharge exists in favor of employees who serve under contract as well as those who serve at will."). Any dispute about Drubetskoy's employment status is therefore immaterial, and Wells Fargo's Motion to Dismiss Count Two will be granted.

### 3. Counts Three and Four – Quantum Meruit and Unjust Enrichment

In Counts Three and Four, Drubetskoy asserts claims under the related theories of quantum meruit and unjust enrichment. The substance of both claims is that Wells Fargo enjoyed the benefit of Drubetskoy's services but failed to pay him earned commissions, resulting in a windfall for Wells Fargo. To establish quantum meruit, a plaintiff must show that "the services were rendered under such circumstances as to indicate that the plaintiff expected to be paid for them, and that the recipient of the services expected or should have expected to pay for them." *McLaughlin v. Murphy*, 372 F. Supp. 2d 465, 471 (D. Md. 2004). Similarly, in order to recover under a theory of unjust enrichment, the plaintiff must establish three elements: (1) "a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Dep't of Hous. & Cmty. Dev. v. Mullen*, 165 Md. App. 624, 659, 886 A.2d 900, 921 (Md. Ct. Spec. App. 2005).

Drubetstkoy's complaint alleges that he benefited Wells Fargo by originating and closing loans, and that Wells Fargo agreed to pay him commissions. Compl. ¶ 6. Drubetskoy concedes

that his quasi-contract claims are not applicable if a valid employment contract exists, because in Maryland, "a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96, 747 A.2d 600, 607 (2000) (quoting *FLF, Inc. v. World Publ'ns, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998)). Drubetskoy maintains that, "a factual dispute exists as to whether Plaintiff and Defendant were parties to a valid, enforceable employment contract." Pl.'s Opp. 4, 5. Courts have permitted alternative pleadings with both contractual and quasi-contractual theories "when the terms of a contract or parties to said contract are disputed." *RaceRedi Motorsports, LLC v. Dart Machinery, Ltd.*, 640 F. Supp. 2d 660, 666 (D. Md. 2009); *see also Jones v. Koons Automotive, Inc.*, 752 F. Supp. 2d 670, 688 (D. Md. 2010) (declining to dismiss plaintiff's unjust enrichment claims in part because the defendant had not conceded the existence of a valid contract with plaintiff).

Drubetskoy seeks to obtain, via discovery, the alleged employment agreement between Wells Fargo and Drubetskoy, to which the compensation plan was appended. To the extent that a valid employment agreement exists, Druebtskoy's quantum meruit and unjust enrichment claims will fail, because "no quasi-contractual claim can arise where a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." *Cnty. Comm'rs of Caroline Cnty.*, 747 A.2d at 607. In the absence of a valid employment contract, however, the quantum meruit and unjust enrichment claims may survive only as to commissions on loans earned prior to Druebtskoy's October 24, 2012 criminal conviction.

### 4. Count Five – Maryland Wage and Hour Law

Drubetskoy's complaint also alleges that Wells Fargo violated the MWHL by failing to pay him overtime wages in his first two years of employment. Compl. ¶¶ 33-39. Drubetskoy

alleges that during that time frame, he worked roughly 50 to 52 hours per week, but was not compensated for overtime work until Wells Fargo changed its overtime policy in late 2011. The policy change was not retroactive, and Drubetskoy now seeks pay for overtime he worked in 2010 and 2011. Wells Fargo argues that the policy change later entitling Drubetskoy to overtime wages does not indicate that Wells Fargo initially misclassified Drubetskoy as an employee exempt from overtime wages. Def.'s Mot. 12.

The MWHL is the state equivalent to the Fair Labor Standards Act ("FLSA"). *See Newell v. Runnels*, 407 Md. 578, 649, 967 A.2d 729, 771 (2009). The law requires employers to pay overtime wages of at least 1.5 times the usual hourly wage. Md. Code Ann. Lab. & Empl. § 3-415. Overtime wages are computed on the basis of "each hour over 40 hours that an employee works during 1 workweek." Md. Code Ann. Lab. & Empl. § 3-420. To assert a claim for overtime compensation, "a plaintiff must plead (1) that he worked overtime hours without compensation; and (2) that the employer knew or should have known that he worked overtime, but failed to compensate him for it." *Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 667 (D. Md. 2011) (internal quotation marks omitted); *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012) (noting that the pleading standards for the MWHL mirror that of the FLSA). The employer's knowledge of the employee's overtime work may be either actual or constructive. *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986). Drubetskoy's complaint meets the general pleading standards for an overtime compensation claim. Drubetskoy alleges that he was never paid overtime wages for his first year of employment with Wells Fargo, despite working 50 to 52 hours per week. Compl. ¶ 35. He also alleges that Wells Fargo has records showing the hours that he worked each day and workweek, thus putting Wells Fargo on constructive notice of Drubetskoy's overtime work. Compl. ¶ 38.

A claim for overtime compensation, pursuant to the FLSA, is limited by several exemptions, which preclude certain employees from receiving overtime wages. The FLSA, and, by extension, the MWHL, exempt certain employees from the requirements of overtime wages, including employees in a bona fide executive, administrative, or professional capacity, or in the capacity of outside salesman. 29 U.S.C. § 213(a)(1); Md. Code Ann. Lab. & Empl. § 3-403(a). Wells Fargo suggests that Drubetskoy's employment met the administrative exemption, which is defined as any employee (1) who is "compensated on a salary or fee basis at a rate of not less than $455 per week;" (2) "[w]hose primary duty is the performance of the office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" (3) and "whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a); Md. Code Ann. Lab. & Empl. § 3-403(a)(1) (including the administrative exemption in the MWHL). Wells Fargo contends that Drubetskoy has not alleged facts sufficient to show that he did not meet an exemption that barred him from overtime wages. Def.'s Mot. 13. Drubetskoy counters that it is not his burden, but the employer's, to demonstrate that he did not fall under an applicable exemption. Pl.'s Opp. 5.

Drubetskoy is correct that, "an employee's exempt status is an affirmative defense," that "cannot ordinarily be determined on a Rule 12(b)(6) motion to dismiss for failure to state a claim." *McLaughlin*, 372 F. Supp. at 470. Therefore, the fact that Drubetskoy's complaint fails to anticipate Wells Fargo's exemption defense is not a ground for dismissal. As the case is proceeding in any event, Wells Fargo may obtain through discovery a more clear explanation of Drubetskoy's theory, e.g., whether Wells Fargo initially misclassified him as exempt. Wells

Fargo's Motion to Dismiss Count V therefore will be denied, without requiring Drubetskoy to amend this count.

**CONCLUSION**

For the foregoing reasons, Wells Fargo's motion to dismiss Counts I, III, and IV is granted as to commissions on loans not earned before October 24, 2012, and otherwise denied. Wells Fargo's motion to dismiss Count II is granted, and Wells Fargo's motion to dismiss Count V is denied.

A separate order follows.


Dated: December 20, 2013 　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　　　　　　　　　Catherine C. Blake
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge